IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT MORALES, ANGELA K. MORALES,
BRANDON R. MORALES, MARY ANN MORALES,
and TATE W. MORALES,

        Plaintiffs,

vs.                                                                                                             No. CIV 04-0558 JB/WDS

E.D. ETNYRE & CO.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant E.D. Etnyre & Co.'s Motion In Limine Regarding the Testimony of Gerald Demarest, M.D., filed May 23, 2005 (Doc. 102). The Court held a hearing on this motion on June 3, 2005, and Dr. Demarest appeared and testified. See Transcript of Hearing at 6:8 - 28:24, taken June 3, 2005 (hereinafter "Transcript").[1] The primary issue is whether the Court should exclude Dr. Demarest's testimony concerning future medical care and treatment. Consistent with the Court's ruling at the hearing, and for the reasons given at the time of the hearing, the Court will grant in part and deny in part Etnyre's motion. Because Dr. Demarest's testimony will assist the trier of fact, the Court will allow Dr. Demarest to testify regarding Plaintiff Robert Morales' future medical expenses. The Court will not, however, allow Dr. Demarest to testify regarding retraining, lifestyle changes, or special clothing. The Court will also allow Dr. Demarest to provide background information regarding the calculation of a burn patient's morbidity rate, but

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

will not allow testimony regarding Morales' morbidity rate.

## PROCEDURAL BACKGROUND

The Plaintiffs retained Dr. Demarest to offer testimony at trial as an expert witness regarding Morales' current status, current medical condition, and need for future medical treatment and care. On December 6, 2004, Etnyre deposed Dr. Demarest. Also that same day, pursuant to the Plaintiffs' request and over Entnyre's wish that the deadline remain firm, the Court ordered that the deadline to file pre-trial motions be extended from the initial deadline of January 14, 2005 to January 21, 2005. See Order, filed December 6, 2004 (Doc. 44).

On May 23, 2005 -- more than four months after the deadline for filing pre-trial motions passed and almost six months after Etnyre took Dr. Demarest's deposition -- Etnyre filed its motion in limine to exclude Dr. Demarest's testimony. Etnyre moves the Court, pursuant to rules 402, 403, 702, and 703 of the Federal Rules of Evidence, for an order in limine excluding the testimony of Demarest regarding Morales' future medical expenses. Morales does not concur with this motion and submitted an affidavit from Dr. Demarest in response.

## FACTUAL BACKGROUND

Dr. Demarest is board certified as a general surgeon and is currently a University of New Mexico employee. The primary focus Dr. Demarest's practice is on the care and treatment of burn victims such as Morales. Dr. Demarest has thirty-two years of experience treating burns.

Dr. Demarest's deposition shows that, on two occasions, he personally conducted evaluations of Morales. See Deposition of Gerald Demarest, M.D. at 7:11-13, taken December 6, 2004 (hereinafter "Demarest Depo."). In conducting these evaluations, Dr. Demarest interviewed Morales and his wife about the events that caused Morales' injury, see id. at 8:9-15, performed physical

examinations of Morales, see id. 9:22 - 10:1, and reviewed Morales' relevant medical records from Texas Tech University, see id. at 10:3-11.

Dr. Demarest opined that Morales' future medical expenses might range between $650,000.00 and $750,000.00. In reaching this figure, Dr. Demarest did not rely upon a life care plan prepared by an expert. Rather, Dr. Demarest made an assessment of Morales' likely future need for medical treatment, consulted actuarial tables of life care statistics, and relied on his experience in similar lawsuits to convert future medical treatment into a monetary figure. See Affidavit of Gerald Demarest, M.D. ¶ 2, at 1 (hereinafter "Demarest Aff."). Dr. Demarest does not give the present cash value of the reasonable expenses of future medical care, nor does Dr. Demarest give any opinions regarding the necessity of future medical care within a reasonable degree of medical probability.

Although Morales retained Dr. Demarest as an expert, Dr. Demarest admits that he is not an expert with respect to "life care planning." Where Dr. Demarest states that he is not an expert, however, he is referring to the fact that he is not an economist and did not compile actuarial tables. See Demarest Aff. ¶ 3, at 1.

With respect to how he arrived at his estimation of Morales' future medical expenses, Dr. Demarest testified:

> Q: Now, in this report you have a figure of $650,000.
>
> A. I have used that figure based on my experience of people who look at the cost of living. There are docs who look at activities. The people that I have seen who look at the long-term, I have forgotten the name of the people, there are people in Albuquerque that do it in the local area.
>
> People with burns such as this, I have seen the term between five and $750,000. Lifetime for somebody in this age group. I can't break it down specifically, but in actuarial tables -- this guy is what, 33?

> Q. Yes.
>
> A. Your long-term warranty expires at age 79 here in this country. He has 45 years to go, almost 46 years, life expectancy. However they equate that, somebody with a 40 percent burn.
>
> Q. This number then, where you got that is from other cases that you had seen?
>
> A. Right. Which somebody who has done job impairment.
>
> Q. Life care planning?
>
> A. Yes, life care planning, something like that.

Demarest Depo. at 41:10 - 42:9. In his affidavit, Dr. Demarest states that he has "consulted life care statistics." Demarest Aff. ¶ 2, at 1.

Demarest also testified, however, that he had not performed any specific analysis of Morales' injuries and/or damages, and stated he had "compared" this case with "six or seven others" he had "looked at."

> Q. You haven't done any specific analysis yourself?
>
> A. No, I am not an expert, I used specific experience in six or seven cases that I looked at.

Demarest Depo. at 42:14-17. Where Dr. Demarest states that he used specific experience in six or seven cases at which he looked, he is referring to the personal experience that he has gained over the years in working with other patients, like Morales, who were involved in litigation similar to this case. See Demarest Aff. ¶ 4, at 1-2.

At the hearing on June 3, 2005, Dr. Demarest testified how he supported the $650,000 figure. See Transcript at 20:17 - 25:4.

**RULE 402**

Rule 402 of the Federal Rules of Evidence provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

### RULE 403

The court may exclude evidence, although relevant, if the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence, substantially outweighs the evidence's probative value. See Fed. R. Evid. 403.

### RULE 702

Rule 702 of the Federal Rules of Evidence provides:

If the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.

### RULE 703

An expert may rely facts or data that are not admissible in evidence in forming an opinion. The expert, however, shall not disclose to the jury facts or data that are otherwise inadmissible "unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

### ANALYSIS

Etnyre raises a number of concerns about Dr. Demarest's testimony. The primary contention,

however, appears to be that Dr. Demarest does not provide adequate foundation for his testimony that Morales needs $650,000.00 to $750,000.00 in future medical care. Because Dr. Demarest is experienced in treating burn patients, and through his experience has sufficient facts and data to estimate medical expenses for burn victims, the Court will allow him to testify about Morales' future medical expenses.

**I.      THE COURT WILL ENTERTAIN ETNYRE'S MOTION IN LIMINE.**

Morales argues that the Court should deny Etnyre's motion in limine on the ground that Etnyre filed its motion on May 23, 2005, well after the deadline of January 21st, 2005. Etnyre has not offered an excuse for having waited to file its motion and does not address or explain why it did not file its motion until May 23, 2005. Morales contends that the seven weeks that passed between the deposition and the deadline was adequate for Etnyre to have reviewed Dr. Demarest's testimony and to have filed a motion to exclude it. Morales argues that, at this late date, he would be left without adequate recourse should the Court grant Etnyre's motion. Morales contends that the Court should deny the motion because Etnyre filed the motion well after the January 21 deadline and because Morales would be unfairly prejudiced by the exclusion of Dr. Demarest's testimony in this late stage of the litigation.

The January 21, 2005 deadline was for "pre-trial motions, other than discovery motions, and *Daubert* motions." Order, at 1, filed December 6, 2004 (Doc. 44). The Court often meets with counsel, either at the pre-trial conference or in other hearings, and discusses the need to set other deadlines, such as for Daubert motions and/or motions in limine. Those deadlines did not get set in this case.

In any case, the January 21, 2005 was not a deadline for motions in limine. Moreover, the

Court must consider evidentiary issues at some point.  It is best for the Court to consider them pre-trial.  The Court will therefore consider and decide Etnyre's motion in limine on the merits.

**II.     THE COURT WILL ALLOW DR. DEMAREST TO TESTIFY REGARDING MORALES' FUTURE MEDICAL EXPENSES.**

Etnyre asserts that the Court should not allow Dr. Demarest to testify regarding Morales' future medical expenses because Dr. Demarest is not an expert in life care planning and because he based his opinion on a comparison of Morales' case and six or seven other cases.  But while it is the trend to see life care planners testify in cases like this one, there is no requirement that they testify about future medical expenses.  Indeed, in the not too distant past, medical doctors testified about the cost of future medical expenses.  In any case, it is still the case that a doctor can testify about future medical expenses.  Dr. Demarest, although admittedly not an expert in life care planning, has specialized in the care and treatment of burn patients for 32 year.  See Demarest Aff. ¶ 4, at 1-2.  Dr. Demarest personally examined Morales on two occasions, spoke with Morales and his wife regarding the accident, and evaluated Morales' medical records to assess Morales' future medical needs.  See id. ¶ 2, at 1.   He then consulted life care statistics, see id., and compared Morales' case to six or seven other cases in which he was personally involved, see id. ¶ 4, at 1-2, to arrive at a monetary figure.  That Dr. Demarest is not an expert in life care planning and relies on actuarial tables in forming his opinion does not make his opinion inadmissible. The Court concludes that Dr. Demarest's opinions are based on his expertise and evaluation of Morales.  The Court believes Dr. Demarest's testimony is based on sufficient data and reliable principles and methods, and will assist the trier of fact. The Court will therefore allow Dr. Demarest to testify about Morales' future medical expenses.

**III.    THE COURT WILL NOT ALLOW DR. DEMAREST TO TESTIFY REGARDING RETRAINING, LIFESTYLE CHANGES, OR SPECIAL CLOTHING.**

The Court does not believe Dr. Demarest has sufficient expertise to testify regarding retraining, lifestyle changes, or special clothing. At the hearing on this motion, Morales represented that Dr. Demarest did not need to testify regarding these subjects. See Transcript at 36:4-7. Based on this representation, the Court will not allow Dr. Demarest to testify regarding retraining, lifestyle changes, or special clothing.

### IV.     THE COURT WILL NOT ALLOW DR. DEMAREST TO TESTIFY REGARDING MORALES' MORBIDITY RATE.

At the hearing on this motion, Morales represented that Dr. Demarest's testimony would include an explanation of how a burn patient's morbidity rate is calculated. See id. at 36:8-14. Morales indicated, however, that Dr. Demarest would not testify regarding Morales' morbidity rate. See id. Based on this representation, the Court will allow Dr. Demarest to provide background information regarding the calculation of a burn patient's morbidity. The Court will not allow Dr. Demarest to testify regarding Morales' morbidity rate.

**IT IS ORDERED** that Defendant E.D. Etnyre & Co.'s Motion In Limine Regarding the Testimony of Gerald Demarest, M.D., is granted in part and denied in part. Dr. Gerald Demarest may testify regarding Plaintiff Robert Morales' future medical expenses and the calculation of a burn patient's morbidity rate. Dr. Demarest may not testify regarding retraining, lifestyle changes, special clothing, or Morales' morbidity rate. The Court instructs the Plaintiffs not to mention, refer to, interrogate about, or attempt to convey to the jury in any manner, either directly or indirectly, any evidence regarding these subjects. To the extent that there is a dispute about the admissibility of specific testimony, the parties are instructed to approach the bench before eliciting or inferring such testimony in any way.

                                                      */s/ James O. Browning*
                                          UNITED STATES DISTRICT JUDGE

*Counsel:*

Jerrald J. Roehl
The Roehl Law Firm, P.C.
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*

Terry R. Guebert
Marcus E. Garcia
Guebert, Bruckner & Bootes, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendant E.D. Etnyre & Co.*