IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT MORALES, ANGELA K. MORALES,
BRANDON R. MORALES, MARY ANN MORALES,
and TATE W. MORALES,

      Plaintiffs,

vs.                                                                                            No. CIV-04-0558 JB

E.D. ETNYRE & CO.,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant E.D. Etnyre & Co.'s First Motion and Memorandum Brief For Judgment as a Matter of Law on Strict Product Liability Claims, filed June 21, 2005 (Doc. 145). The primary issue is whether the Plaintiffs have made an adequate showing of alternative designs to proceed to the jury. Because the Court concludes that the Plaintiffs have introduced sufficient evidence on all but one of their alternatives, the Court will deny the motion in part and grant the motion in part.

**PROCEDURAL BACKGROUND**

The Plaintiffs have set forth a claim in strict liability, alleging that Etnyre defectively designed its asphalt distributor machine -- the Black Topper; that the product was unreasonably dangerous for its intended purposes; and that the defect caused the Plaintiffs harm. See Pretrial Order at 3, filed June 10, 2005 (Doc. 123). In their opening statement at trial, the Plaintiffs used a chart of probable evidence, pointed to four design defects, and offered five solutions.

Design defect No. 3 was "Pressure relief system designed wrong." The Plaintiffs' solution

was to "Put window in pipe to look down." Defect No. 4 was "No way to easily look through pressure relief vent pipe to see if clogged." The Plaintiffs' solution was "Design system so pipe discharges" and "Design system so pipe discharges."

Etnyre immediately contended that it had not heard some of these defects and alternatives, so the Court asked the Plaintiffs' counsel to establish that he had given notice to Etnyre of this alternative design. The next morning, the Plaintiffs presented the Court with a list of the defects and alternative designs, with supporting authority. As to No. 3, the Plaintiffs grouped it with No. 4.

To support their contention of notice, the Plaintiffs pointed to their expert's report, where he had said:

> a. Failure of E.O. Etnyre & Co. to:
>
>> i. Properly design the Road Oil resurfacing truck:
>>
>>> 4: To avoid:
>>>
>>>> a. Incomplete pressure relief system cleaning leading to failure of the relief system
>>>>
>>>> b. Inadequate sized or plugged pressure relief system capable of handling steam eruption pressure.

<u>See</u> Report of Robert Puschinsky at 2 (dated July 8, 2004). The Plaintiffs then pointed to pages 113:22-25; 114:1-15, 23-25; 115:1-15 of Puschinsky's deposition.

> Q: And what was the relief system in place in this particular item?
>
> A: The hatch. That hatch is not an appropriate relief system, because it's capable -- it puts oil where you can't tolerate it.
>
> Q: Okay.

-2-

> A: So it's not an acceptable relief system.
>
> Q: And then the vent -- okay. So what your are saying is, it was adequate to relieve the pressure, but it was inappropriate because you don't believe the hatch should relieve the pressure?
>
> A: I believe that a relief system that -- as this one is designed is not qualified as a meaningful relief system. No, I do not think it's a -- it relieves the pressure, but it doesn't perform the safety relief function. This is supposed to be a pressure safety valve. That's exactly the terminology used in the codes, and this pressure safety valve means it has to do it safely.
>
>     * * * *
>
> Q: The accident was caused by Etnyre's failure to properly design the road surfacing truck to avoid incomplete tank cleaning leading to failure of tank venting system to relieve steam eruption pressure. Anything new in that from what we've already covered?
>
> A: Well, yeah.
>
> Q: What?
>
> A: That's -- that the vent system possible being plugged.
>
> Q: Well, isn't that -- isn't that 5(b), adequate tank venting system?
>
> A: No. 5(b) is the sizing in the first place.
>
> Q. So (b) is sizing?
>
> A. (Witness nods head.)
>
> Q. And (a) is what?
>
> A. It's not designed such that it would be always clean, always open. It doesn't have a test feature to it so you can know that it's open.

Puschinsky's Deposition at 113:22 - 115:15, taken October 8, 2004 (hereinafter "Puschinsky Depo.")

The Plaintiffs then refined their alternatives and defects. As to No. 3, the Plaintiffs changed it to say: "Etnyre permitted entry of hot oil more than 200 degrees into system" and changed the

alternative to say "provide valve with temperature sensitive control." From the deposition and argument of counsel, the Court understood that Puschinsky was proposing a temperature sensitive control on the vent overflow pipe.

When Puschinsky testified on direct examination, he seemed to confirm that the control would be on the vent. On cross, however, apparently realizing that it would not make a lot of sense to put the control on the vent system, he suggested that it should go on the City of Hobbs' overhead hose. The Plaintiffs' counsel admitted that there was inconsistency in Puschinsky's testimony.

Etnyre moved, pursuant to rule 50(a) of the Federal Rules of Civil Procedure, for a judgment as a matter of law on all claims that the Plaintiffs allege. The Court denied the motion as to four of the alternatives, but granted it as to alternative No. 3. On January 23, 2005, the jury returned a verdict for Etnyre, finding no defect in the Black Topper.

## LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

When considering whether to enter judgment as a matter of law, a trial court should view the evidence and all reasonable inferences therefrom in the light most favorable to the party against whom the motion is made. See Censidine v. Newspaper Agency Corp., 43 F.3d 1349, 1363 (10th Cir. 1994). This standard is identical to that the court must employ when ruling on motions for summary judgment under rule 56. See Pendleton v. Conoco Inc., 23 F.3d 281, 286 (10th Cir. 1994). If, therefore, the evidence points but one way and is susceptible to no reasonable inferences that support the opposing party's position, the court should grant judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1985). "A mere scintilla of evidence, however, is insufficient to create a jury question." Honce v. Vigil, 1 F.3d 1085, 1088 (10th Cir. 1993)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 250). The court must ask whether there is evidence upon which a

jury could properly find a verdict for the nonmoving party. See Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 499 (10th Cir. 1984).

In analyzing whether sufficient evidence exists on a plaintiff's claims, the trial court applies the forum state's substantive law, including the applicable standards of proof. See Oja v. Howmedica, Inc., 111 F.3d 782, 792 (10th Cir. 1997). In doing so, it can grant judgment as a matter of law on an issue-by-issue basis. See Fed. R. Civ. P. 50(a)(1); Hammond v. T.J. Litle & Co., Inc., 82 F.3d 1166, 1172 (1st Cir. 1996).

## SUBSTANTIVE LAW IN A DIVERSITY CASE

In Wankier v. Crown Equip. Corp., 353 F.3d 862 (10th Cir. 2003), the United States Court of Appeals for the Tenth Circuit explained:

> In cases arising under a federal court's diversity jurisdiction, the task of the federal court is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law. The federal court must defer to the most recent decisions of the state's highest court. Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do.

Wankier v. Crown Equip. Corp., 353 F.3d at 866.

## NEW MEXICO LAW ON STRICT PRODUCTS LIABILITY FOR DEFECTIVELY DESIGNED PRODUCTS

As the Court stated in its Memorandum Opinion and Order regarding the testimony of Puschinsky, the United States District Court for the Tenth Circuit has indicated twice that it is unclear whether New Mexico requires an alternative design to impose liability for a design defect. See Meil v. Piper Aircraft Corp., 658 F.2d 787, 789 (10th Cir. 1981)("New Mexico has not defined the elements for proof of strict liability for design defect and it is uncertain whether New Mexico would require proof that an alternative safer design was available in order to impose liability."). See also

Martin v. Unit Rig & Equip. Co., 715 F.2d 1434, 1439 (10th Cir. 1993)("In actions arising from design defects it is unclear whether New Mexico would require proof of an available alternative design in order to impose liability.").

In 1998, the American Institute of Law ("ALI") promulgated the Restatement (Third) of Torts: Products Liability based on a review of the law in all jurisdictions. According to the Restatement (Third) of Torts: Products Liability § 2(b), a plaintiff has the burden of showing that the defendant could have used an alternative design at the time of manufacture that would have made the product safer for its intended use. With respect to defective design, Restatement (Third) of Torts: Products Liability § 2(b) (1998) provides that a product "is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, and the omission of the alternative design renders the product not reasonably safe." Comment (d) states: "The test is whether a reasonable alternative design would, at a reasonable cost, have reduced the foreseeable risks of harm posed by the product and, if so, whether the omission of the alternative design by the seller or a predecessor in the distribution chain rendered the product not reasonably safe."

New Mexico courts have cited favorably portions of the Restatement (Third) of Torts: Product Liability. It is also fair to say that the state courts, in their decisions, have followed the Restatement (Third). The Court cannot, however, say that the state courts have yet adopted the Restatement (Third).

In Brooks v. Beech Aircraft Corp., 120 N.M. 372, 902 P.2d 54 (1995), Chief Justice Ransom, writing for the Supreme Court of New Mexico, stated:

> The Committee Comment for U.J.I. lists seven risk-benefit criteria to be weighed by

>  the jury which were suggested by John Wade in his article, On the Nature of Strict Tort Liability for Products, 44 Miss. L.J. 825, 837-38 (1973). These are: (1) the usefulness and desirability of the product; (2) the availability of other and safer products to meet the same need; (3) the likelihood of injury and its probable seriousness, i.e., "risk"; (4) the obviousness of the danger; (5) common knowledge and normal public expectation of the danger (particularly for established products); (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings); and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

120 N.M. at 379-80, 902 P.2d at 61-62 n. 2. When the ALI promulgated the Restatement (Third) of Torts: Products Liability § 2, the ALI cited with approval the Supreme Court's "risk utility" case in <u>Brooks v. Beech Aircraft Corp</u>. The committee comments for Restatement (Third) of Torts: Products Liability § 2(b) states that the Supreme Court of New Mexico in <u>Brooks v. Beech Aircraft Corp.</u> follows the risk/benefit analysis that the ALI codified in the Restatement (Third) of Torts: Products Liaibility.

The New Mexico courts have cited the tentative versions of the Restatement (Third) of Torts: Products Liability. <u>See</u> <u>Parker v. St. Vincent Hosp.</u>, 122 N.M. 39, 41, 910 P.2d 1104, 1107 (Ct. App. 1996)(citing Restatement (Third) of Torts: Products Liability § 1 (Tentative Draft No. 2, 1995)("Ordinarily, any entity engaged in the business of selling or otherwise distributing products is strictly liable for distributing a defective product."). In <u>Spectron Dev. Lab. v. American Hollow Boring Co.</u>, 123 N.M. 170, 175, 936 P.2d 852, 857 (Ct. App. 1997), the Honorable Harris L. Hartz, then Court of Appeals Judge for the Court of Appeals for the State of New Mexico and now a Judge on the Tenth Circuit, authored an opinion which adopted the definition of "manufacturing defect" contained in Tentative Draft No. 2, Section 2(a). While Judge Hartz did not formally adopt the Restatement (Third), perhaps because he was on the Court of Appeals rather than on the Supreme Court, and perhaps because the Restatement (Third) was still in draft, he stated:

-7-

The basic rule of strict products liability is summarized in Section 1 of Restatement (Third) of Torts: Products Liability (Tentative Draft No. 2, 1995)[hereinafter Tentative Draft No. 2]:

Liability of Commercial Seller or Distributor for Harm Caused by Defective Products

(a) One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the product defect.

(b) A product is defective if, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings.

123 N.M. at 174, 936 P.2d at 856. Thus, while the Court cannot go so far as to say that the Court of Appeals "adopted" the basic rule of strict products liability summarized in the Restatement, it is fair to say that Judge Hartz thought the Restatement (Third) accurately reflected New Mexico's strict products liability law.

The New Mexico courts have cited the Restatement (Third) of Torts in a number of other opinions. See Berlangieri v. Running Elk Corp., 134 N.M. 341, 347, 76 P.3d 1098, 1104 (2003)(holding that the Restatement (Third) of Torts: Apportionment of Liability § 2 (2000), does not alter the rule that "[a] plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy"); Herrera v. Quality Pontiac, 134 N.M. 43, 53, 73 P.3d 181, 191 (2003)(noting that in the Restatement (Third) of Torts: Liability for Physical Harm, § 6 cmt. f (Tentative Draft No. 2, 2002) "legal scholars continue the longstanding debate over the role of foreseeability in a duty analysis"); Payne v. Hall, 2004-NMCA-113, ¶ 48, 98 P.3d 1030, 1043 (N.M Ct. App. 2004)(Alarid, J., concurring)(citing Restatement (Third) of Torts: Apportionment of Liability § 26 cmt. a (2000)); Lewis v. Samson, 128 N.M. 269, 282, 992 P.2d 282, 295 (N.M. Ct.

App. 1999)(citing Restatement (Third) of Torts: Apportionment of Liability § 50); Norwest Bank v. Chrysler Corp., 127 N.M. 397, 402, 981 P.2d 1215, 1220 (Ct. App. 1999)(citing Restatement (Third) of Torts, Products Liability § 16 cmt. f (1998)); Baer v. Regents of the Univ. of Cal., 126 N.M. 508, 512, 972 P.2d 9, 13 (N.M. Ct. App. 1998)(citing Restatement (Third) of Torts: Apportionment of Liability § 50(b)(1), (2) (Proposed Final Draft, 1998)); Parker v. St. Vincent Hosp., 122 N.M. 39, 41, 919 P.2d 1104, 1106 (N.M. Ct. App. 1996)(citing Restatement (Third) of Torts: Products Liability § 1 (Tentative Draft No. 2, 1995)(hereinafter Tentative Draft No. 2)). In none of these opinions did a New Mexico court adopt the Restatement (Third) of Torts.

## ANALYSIS

Etnyre contends that the Plaintiffs have failed to make a prima facie showing to submit their claim to the jury. Etnyre also contends that the City of Hobbs' and Robert Morales' unforeseen misuse of the Black Topper requires judgment as a matter of law. Because the jury has already returned a verdict against the Plaintiffs and for Etnyre on the defect question, the Court will not discuss the defects and alternative designs submitted to the jury, but will only discuss the one that the Court did not submit -- No. 3.

**I.   THE PLAINTIFFS HAVE PRESENTED SUFFICIENT EVIDENCE ON EACH ESSENTIAL ELEMENT OF THEIR CLAIM THAT THE BLACK TOPPER WAS DEFECTIVELY DESIGNED, BUT THE COURT WILL NOT SUBMIT DEFECT AND ALTERNATIVE NO. 3.**

Etnyre contends that the Plaintiffs failed to make a prima facie showing to satisfy the elements for a design defect case in accordance with the Restatement (Third) of Torts: Products Liability. The Court agrees that, if the Supreme Court of New Mexico were presented with the precise issue in this case, it would most likely adopt the Restatement (Third). Accordingly, the Court will assume that

the Restatement (Third) of Torts: Products Liability governs this action and that the Restatement (Third) is the controlling law for the Plaintiffs' claims based on defective design.

Before the ALI issued considered or issued the Restatement (Third), New Mexico had adopted the "risk-utility" test.  The Court believes that test required the plaintiff to prove the existence of an "alternative design" to determine whether the defendant defectively designed a product.  Thus, to the extent that a plaintiff could come to court and merely criticize a product, the Court believes that the New Mexico law required the plaintiff to propose an alternative design.  While the Tenth Circuit correctly stated in 1993 that no state court had expressly required a plaintiff to propose an alternative design, the Court thinks that, by the time of the Supreme Court's decision in Brooks v. Beech Aircraft Corp., the plaintiff had to show an alternative design.

The Court believes that the Plaintiffs met the threshold for showing an alternative design. While the Court does not believe New Mexico courts and its UJI's require the plaintiff to introduce evidence on each of the seven factors to make its prima facie case, those factors are fair game for argument.  New Mexico, in its comments to the UJI's, appear to opt for leaving much of this to argument of counsel and experts rather than to a strict, rigid showing in the plaintiff's prima facie case. Even Etnyre concedes, in its proposed jury instruction, that "[a] plaintiff is not necessarily required to introduce proof on all these factors; their relevance, and the relevance of factors, will vary from case to case."  Defendant E.D. Etnyre and Co.'s Proposed Jury Instructions, at 42, filed June 13, 2005 (Doc. 128).

While the Court does not believe that New Mexico requires quite the rigorous showing for a prima facie of alternative design that Etnyre suggests, it does require the plaintiff to show an alternative design.  The Plaintiffs failed to make that showing as to No. 3.

First, the Plaintiffs have not convincingly shown the Court that what Puschinsky now opines was offered before trial. The Court is concerned that the Plaintiffs have not given Etnyre the notice the rules require of a party and its expert. That alone is a ground for not letting this evolving alternative to go to the jury.

Puschinsky testified that the material should not have entered quickly into the Black Topper. At best, he offers two alternatives; at worst, he cannot make up his mind. The final opinion was that Etnyre should have installed a temperature sensing device on the City of Hobbs' equipment. This is not Etnyre's product. While the Plaintiffs' counsel suggests that Etnyre could have sent this equipment to the City or told them to install such a device, the testimony was that most users did not load the vehicle from the top as Hobbs did. But Puschinsky did not testify about how Etnyre would do this. In the end, the Plaintiffs' attorney was left extrapolating the alternative design from what Puschinsky had tossed out at trial. There was a lack of evidence and more speculation about what this alternative was to be.

In the end, this alternative is not a change to Etnyre's product. Moreover, the evidence showed that Puschinsky had not performed any testing on this valve, wherever it was installed; he did not perform any calculations because he did not know some of the facts in the case; he did not perform any drawings; he did not specify any specific valves; and he did not perform a complete engineering analysis. While the Court need not decide precisely what an expert must do to present an alternative design, and need not decide precisely what is the adequate prima facie showing of alternative design, the Plaintiffs did not make it for No. 3. In the end, the Court did not understand what was being proposed and did not have confidence that the Plaintiffs' expert did either.

## II.     THE COURT WILL NOT SUBMIT INDEPENDENT INTERVENING CAUSE TO

**THE JURY.**

After the adoption of comparative negligence, New Mexico requires evidence of intentional or criminal activity, or extraordinary negligence, for its courts to submit independent intervening cause to the jury. While the evidence of the City of Hobbs' negligence should go to comparative fault, the Court does not see the City's negligence as so unforeseeable or extraordinary that it should completely relieve Etnyre of responsibility for a defect and proximately caused harm from it. The Court will submit the issue of comparative fault as a defense to the products claim, but not the issue of independent intervening cause.

**IT IS ORDERED** that Defendants E.D. Etnyre & Co.'s Motion for Judgment is denied except as to Defect and Alternative No. 3, which is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jerrald J. Roehl
The Roehl Law Firm, P.C.
Albuquerque, New Mexico

 *Attorney for the Plaintiffs*

Terry R. Guebert
Marcus E. Garcia
Guebert, Bruckner & Bootes, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendant E.D. Etnyre & Co.*